## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:

**ATHENA DEVELOPMENT, LLC**          **Case No.: 8:12-bk-00011-MGW**
                                      **Chapter 11 Case**

     **Debtor.**

_____/

## ATHENA DEVELOPMENT, LLC'S, SECOND AMENDED
## CHAPTER 11 PLAN, DATED AS OF JUNE 13, 2012

## ARTICLE I
## SUMMARY

Athena Development, LLC's, Second Amended Chapter 11 Plan, dated as of June 13, 2012 (the "Plan"), filed pursuant to Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), proposes to pay creditors and make distributions to the equity security holders of Athena Development, LLC ("Athena," "Debtor," "Debtor-In-Possession" or "Reorganized Debtor," as appropriate) over a period of time beginning on the Effective Date (as defined herein), either from funds generated by the sale or from the surrender of parcels of real property owned by the Debtor. The legal description for the real property and improvements owned by the Debtor (collectively, the "Property") is provided on **Composite Exhibit "B"** as attached to the Disclosure Statement filed in support of this Plan**.**

This Plan provides for one (1) class of Priority Claims; one (1) class of Secured Claims of the Cobb County Tax Collector and/or any Tax Lien Certificate Holders; one (1) class of Secured Claims of German American Capital Corporation; one (1) class of Secured Claims of Midtown Bank & Trust; one (1) class of Unsecured Claims of Midtown Bank & Trust by virtue of its undersecured interest in its collateral; one (1) class of Unsecured Claims of Flagstar Bank on account of its deficiency claim; one (1) class of Unsecured Claims of general unsecured creditors; one (1) class of Unsecured Claims of insiders and other affiliates of the Debtor; and one (1) class of Equity Security Holders.

All Creditors and Equity Security Holders should refer to the remainder of this Plan and the related Disclosure Statement for information regarding the precise treatment of their claim. The Disclosure Statement, which provides more detailed information regarding this Plan and the rights of Creditors and Equity Security Holders, is being circulated with this Plan.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one.**

# ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01 <u>Class 1</u>.          All Priority Claims.
                             **(Georgia Department of Revenue; and possibly others)**

2.02 <u>Class 2</u>.          The Secured Claims of the Cobb County Tax Collector.
                             **(Cobb County Tax Collector and/or Tax Lien Certificate Holders)**

2.03 <u>Class 3</u>.          The Claims of German American Capital Corporation, to the extent allowed as a Secured Claim under §§ 506 and 1111 of the Code.
                             **(German American Capital Corporation)**

2.04 <u>Class 4</u>.          The Claims of Midtown Bank & Trust, to the extent allowed as a Secured Claim under § 506 of the Code.
                             **(Midtown Bank & Trust)**

2.05 <u>Class 5</u>.          The Unsecured Claims of Midtown Bank & Trust.
                             **(Midtown Bank & Trust)**

2.06 <u>Class 6</u>.          The Unsecured Claims of Flagstar Bank.
                             **(Flagstar Bank)**

2.07 <u>Class 7</u>.          The Unsecured Claims of General Unsecured Creditors.
                             **(Various)**

2.08 <u>Class 8</u>.          The Unsecured Claims of Insiders and Affiliates of the Debtor.
                             **(Olympia Development Group, Inc., William Touloumis and possibly others)**

2.08 <u>Class 9</u>.          Equity Security Holders of the Debtor.
                             **(Olympia Development Group, Inc.)**

**ARTICLE III**
**TREATMENT OF UNITED STATES TRUSTEE'S FEES**

3.01    <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) ("U.S. Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another Chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

**ARTICLE IV**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

4.01    <u>Administrative Claims</u>.  All Allowed Administrative Expense Claims are required to be paid on or before the Effective Date pursuant to 11 U.S.C. §§503, 507 and 1129.   Any Allowed Administrative Expense Claims which are not paid before the Effective Date of this Plan will be paid on the Effective Date, unless otherwise agreed between the Debtor and the holder of such Allowed Administrative Expense Claim.

**The Remainder of this Page Intentionally Left Blank**

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

5.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 –Priority Creditors | Impaired. | Priority Creditors will be paid in full,  from Estate Assets, in equal annual installments over a five (5) year period beginning ninety (90) days following the Effective Date of this Plan along with interest at the rate of 4% per annum. |
| Class 2 – Secured Claim of Cobb County Tax Collector and Tax Lien Certificate Holder(s) | Impaired. | The Secured Claim of the Cobb County Tax Collector and/or of any Tax Lien Certificate Holders, if any, will be paid in full, from Estate Assets, in an amount consistent with the valuation of the subject property, or such principal amount as may be reflected on the face of the tax lien certificate, which shall constitute its allowed claim amount in equal annual installments to be made over a five (5) year period beginning one-hundred eighty (180) days following the Effective Date of this Plan, along with interest at the rate reflected on the face of the tax lien certificate or at the rate of 8% per annum, whichever is lower.  Such payments may be paid or prepaid from the proceeds of individual GACC Lots as they are sold.  As a result of the treatment afforded herein, the Cobb County Tax Collector and any Tax Lien Certificate Holders will be precluded from exercising their statutory rights and remedies normally afforded in the collection of delinquent ad valorem real estate and tangible personal property taxes or collection under such tax lien certificates. |
| Class 3– Secured Claim of German American Capital Corporation. | Impaired. | GACC made election pursuant to 11 U.S.C. § 1111(b) requiring that the full amount of GACC's allowed claim be treated as secured and, in turn, waiving any unsecued deficiency claim admitting its claim is fully secured.<br><br>GACC's Allowed Class 3 Secured Claim shall be paid or satisfied in full by one of two methods, the election of which shall be made by GACC prior to the entry of the Confirmation Order: |

<u>Method 1</u>:  On account of GACC's Allowed Class 3 Secured Claim, GACC shall receive:

i)   All proceeds, net of customary closing costs, from the sale of that certain parcel of property pledged to GACC as security for the obligations of the Debtor by ODG located in Hiram, Georgia (the "Hiram Property") on or before the date that is 9 months after the Effective Date and, in the event the Hiram Property is not sold within 9 months after the Effective Date, ODG shall execute a deed-in-lieu for the Hiram Property transferring title of same to GACC which transfer shall constitute partial satisfaction of GACC's Allowed Class 3 Secured Claim to the extent of $380,000.00; and

ii)  All proceeds, net of customary closing costs, from the sale of that certain parcel of property pledged to GACC as security for the obligations of the Debtor by ODG located in Dunedin, Florida (the "Dunedin Property") on or before the date that is 9 months after the Effective Date and, in the event the Hiram Property is not sold within 9 months after the Effective Date, ODG shall execute a deed-in-lieu for the Dunedin Property transferring title of same to GACC which transfer shall constitute partial satisfaction of GACC's Allowed Class 3 Secured Claim to the extent of $650,000.00; and

iii) All proceeds, net of customary closing costs and any tax payments described in Class 2, from the sale of each of the 46 lots constituting GACC's collateral ("GACC Lots") and the Unencumbered Lot, as set forth below:

The Debtor will seek Bankruptcy Court authority to employ a broker who will assist with the marketing and sale of Lots, either individually or in bulk ("Broker").  The Broker will be compensated consistent with terms agreed upon between the Debtor and the Broker, subject to the approval of the Bankruptcy Court ("Commission").

The GACC Lots and the Unencumbered Lot will be sold over a period of five (5) years commencing on the Effective Date.  Upon the sale of each Lot,

| | | |
|---|---|---|
| | | all proceeds, net of customary closing costs, will be paid to GACC at closing in full satisfaction of GACC's secured claim.  GACC shall, within 21 days of the receipt of such proceeds, net of customary closing costs, for each GACC Lot sold, file a partial satisfaction or release of mortgage for the sold GACC Lot.  GACC shall have the absolute right to approve each lot sale based upond contracts proposed by the Broker.  In the event such lots do not sell out to GACC's satisfaction, the Debtor shall execute a deed-in-lieu for the such Lots transferring title of same to GACC which transfer shall constitute partial satisfaction of GACC's Allowed Class 3 Secured Claim, and, along with the sales (or transfers to GACC) of the Hiram and Dunedin Properties, shall constitute a full and complete satisfaction of GACC's Allowed Class 3 Secured Claim.<br><br>**AS AN ALTERNATIVE TO METHOD 1 ABOVE,**<br><br>Method 2:  As an alternative to Method 1, and in complete satisfaction of GACC's Allowed Class 3 Secured Claim, ODG will deed to GACC the Hiram Property and the Dunedin Property and the Debtor will deed to GACC the GACC Lots and the Unencumbered Lot in full and complete satisfaction of GACC's Allowed Class 3 Secured Claim.<br><br>As a result of GACC's election under 11 U.S.C. 1111(b), the foregoing treatment (under either Methods 1 or 2) shall satisfy, in full, GACC's claim against the Debtor whether denominated as a secured or unsecured claim. |
| Class 4—Secured Claim of Midtown Bank & Trust | Impaired. | The real property and improvements constituting Midtown Bank & Trust's collateral ("Lot 52") was valued by agreement between the Debtor and Midtown at $590,000.00.<br><br>As provided in the treatment of Class 3, above, the Debtor will seek Bankruptcy Court authority to employ a broker who will assist with the marketing and sale of Lot 52.  Lot 52 will be marketed and sold consistent with the Bankruptcy Court's ruling on Midtown Bank & Trust's Motion for Relief |

| | | from Automatic Stay (Doc. 34). Midtown Bank & Trust shall receive all sales proceeds from such sale less and except customary broker's fees and closing costs. Alternatively, Midtown Bank & Trust will be entitled to foreclose its mortgage lien on such property. Additionally, Midtown Bank & Trust shall be entitled to receive all insurance claim proceeds from the insurable loss claim filed and prosecuted by the Debtor with respect to its collateral; in the event such insurance claim is denied, the Debtor will pay to repair or replace the damaged collateral necessitating such claim. |
|---|---|---|
| Class 5 – Unsecured Claim of Midtown Bank & Trust | Impaired. | On account of its Class 5 Unsecured Claim, ODG, or William Touloumis shall pay, on the Effective Date, the sum of $25,000.00 in full and final satisfaction of any and deficiency or guaranty indebtedness due Midtown Bank & Trust. |
| Class 6 – Unsecured Claim of Flagstar Bank | Impaired. | On account of its Class 6 Unsecured Claim, ODG or William Touloumis shall pay the sum of $225,000.00 in full and final satisfaction of any deficiency or guaranty indebtedness due Flagstar Bank by the Debtor, ODG or William Touloumis. Such amount to be paid with $100,000 being paid on the Effective Date and the remaining $125,000 being paid in monthly installments of $25,000 one month following the Effective Date and thereafter on the second, third, fourth and fifth months following the Effective Date. |
| Class 7 – Unsecured Claims of General Unsecured Creditors | Impaired. | On account of its Class 7 Unsecured Claims, ODG and Bill Touloumis will fund distributions totaling no less than $60,000 by making annual distributions of $12,000 on the first through the fifth anniversary dates of the Effective Data with the holders of Allowed Unsecured Claims to receive *pro rata* distributions from each of the annual payments described above. Additionally, the Reorganized Debtor will sell the Unencumbered Lot and use such proceeds to make additional distributions to the holders of Class 7 Unsecured Claims. |
| Class 8 - Unsecured Claims of Insiders and Affiliates of the Debtor | Impaired. | Unsecured Creditors who are Insiders or Affiliates of the Debtor will not receive any distribution on account of its Unsecured Claims. |
| Class 9 – Equity Security Holders of | Impaired | The current Equity Security Holder, ODG along with Bill Touloumis, will fund the payments |

| the Debtor | | addressed in Classes 5-7 of this Plan and will contribute the funds described in the 2nd DIP Facility on a non-priming basis in exchange for receiving a 100% ownership interest in the Reorganized Debtor to the same extent of Olympia Development Group's interest in Athena. |
|---|---|---|

## ARTICLE VI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

6.01   Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final, non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

6.02   Claims Objection Deadline.   The deadline for the Reorganized Debtor or other parties in interest to file objections to proofs of claim or other asserted claims is forty-five (45) days following the Effective Date.

6.03.   Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final, non-appealable order.  However, if, at the time a distribution would be made pursuant to the provisions of this Plan but for the existence of an objection to a Claim, such Claim is a Disputed Claim, and a distribution shall be made into a segregated account pending resolution of the objection to the Claim, the same as if the Claim were not a Disputed Claim.

6.03   Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

# ARTICLE VII
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01    Assumed Executory Contracts and Unexpired Leases.

Unless otherwise set forth herein, the Debtor will elect, at or before the Confirmation Hearing, which Executory Contracts and Unexpired Leases to assume with such decisions to be effective as of the Effective Date of this Plan.

The Debtor will assume the Lease Agreement between the Debtor and William Touloumis for use of the Sales Center located on Lot 1.

7.02    Rejection of Executory Contracts and Unexpired Leases.

Upon the Effective Date, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed pursuant to section 7.01 above, or before the date of the order confirming this Plan by separate Motion to Assume or Reject Executory Contract.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the Confirmation Order; the Allowed Amount of any such claim shall be paid as a Class 8 Unsecured Claim.

**ARTICLE VIII**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

8.01   The Reorganized Debtor will, with this Court's approval, employ a Broker to market and sell the GACC Lots, Lot 52 and one additional lot which is owned by the Debtor free and clear ("Unencumbered Lot" and, collectively with GACC Lots and Lot 52, the "Lots") consistent with the treatment described in Article V, above.

8.02   As more particularly provided in Article V above, the Broker's Commission will be paid as agreed between the Debtor and the Broker and as approved by this Court from the Gross Proceeds from the sale of the Lots, either at closing or thereafter as agreed by the Broker.

8.03   The current Equity Security Holder, ODG will fund the payments, including contribution of the sales proceeds from the Hiram and Dunedin Properties or a deed-in-lieu as to same, addressed in Classes 5-7 of this Plan and will contribute the funds described in the 2nd DIP Facility on a non-priming basis in exchange for an ownership interest in the Reorganized Debtor to the same extent of ODG's interest in Athena.

**ARTICLE IX**
**GENERAL PROVISIONS**

9.01    Definitions and Rules of Construction.    The following definitions shall apply and supplement those set forth elsewhere in this Plan.  Terms which are not defined herein shall have the same meaning as is set out in the Bankruptcy Code:

Administrative Expense Claim: "Administrative Expense Claim" means any Allowed Claim of the kind described in § 507 of the Bankruptcy Code, or the costs and expenses of administration of this Chapter 11 Case which are allowed pursuant to Bankruptcy Code § 503(b), to the extent the holder of such Administrative Expense Claim asserts such claim in this Chapter 11 Case within the time fixed by any applicable administrative bar date set by the Bankruptcy Court, including, without limitation, any actual, necessary costs and expenses of preserving or operating the Debtor's estate, any indebtedness or obligation incurred or assumed by the Debtor post-petition, all allowances of compensation and reimbursement of expenses relating to this Chapter 11 Case which are allowed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 330 or 503, any fees or charges assessed against the Debtor's estate, or any other post-petition Claim arising against the Debtor.   This term "Administrative Expense Claim" shall include any Claim which falls within this definition, including, without limitation, the anticipated or potential claims of the following persons:

    a.      Debtor's Counsel, and
    b.      Keystone Consulting Group, Inc.

Administrative Expense Claimant:   "Administrative Expense Claimant" means any Person holding an Allowed Administrative Expense Claim.

Administrative Expense Bar Date: "Administrative Expense Bar Date" means the last date for filing Administrative Expense Applications, that date being either at least fourteen (14) days prior to the hearing on Confirmation, or any continued hearing on Confirmation, or no more than thirty (30) days after the occurrence of the last event giving rise to the Administrative Expense Claim.

Affiliate: "Affiliate" shall have the same meaning as set forth in the Bankruptcy Code.

Allowed: "Allowed" means and includes, with respect to any Claim or Interest, (a) any Claim (other than a Disputed Claim) or Interest, proof of which was timely filed with the Clerk of the Bankruptcy Court on or before the Bar Date (or, by Order of the Bankruptcy Court was, after notice and a hearing, not required to be filed) or (b) any Claim (other than a Disputed Claim) or Interest that has been listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and, in either case, (1) for which no objection to the

allowance thereof has been interposed within the applicable period of limitation fixed in this Plan, in the Bankruptcy Code, in the Bankruptcy Rules, or in a Final Order of the Bankruptcy Court, or (2) an objection has been interposed and such Claim or Interest, or portion thereof, has been allowed by a Final Order of the Bankruptcy Court.

<u>Allowed Amount, Allowed Claim or Allowed Interest</u>: "Allowed Amount", "Allowed Claim" or "Allowed Interest" means the dollar amount in which a Claim or Interest is Allowed; provided however, that the Allowed Amount of a Claim or Interest shall not exceed the Estimated Amount of such Claim or Interest as determined pursuant to an Estimation Order.  No amount shall be Allowed for or on account of: (1) punitive damages, (2) attorney's fees or other court costs, (3) penalties, (4) default rates of interest with respect to secured claims, (5) late fees, charges or other assessments in addition to the principal amount of the indebtedness or (6) post-petition interest with respect to unsecured or undersecured claims, on account of any Claim or Interest except as otherwise expressly specified in this Plan or provided by Final Order of the Bankruptcy Court.

<u>Assumed Contracts</u>: "Assumed Contracts" means those executory contracts and/or unexpired leases assumed pursuant to this Plan or other Order of this Court.

<u>Ballot</u>: "Ballot" means the ballot to be distributed to each holder of a Claim in any impaired Class in connection with solicitation of votes to accept or reject this Plan.

<u>Ballot Date</u>: "Ballot Date" means the date set by the Bankruptcy Court as the last date for timely submission of a Ballot accepting or rejecting this Plan, that date being **May 8, 2012**.

<u>Bankruptcy Code</u>: "Bankruptcy Code" or "Code" means Title 11 of the United States Code.

<u>Bankruptcy Court</u>: "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, or, to the extent the reference is withdrawn, the United States District Court for the Middle District of Florida, Tampa Division.

<u>Bankruptcy Rules</u>: "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as are in effect on the Petition Date or as hereafter amended to the extent such amendments are applicable to this Chapter 11 Case.

<u>Bar Date</u>: "Bar Date" means the last date for filing Proofs of Claim.  The Bankruptcy Court previously set **March 19**, **2012** as the Bar Date in this case.

Business Day: "Business Day" means any day other than a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

Cash: "Cash" means lawful currency of the United States of America and its equivalents.

Claim: "Claim" means (a) any right to payment (including, without limitation, a guarantee) from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, sole, joint, several, joint and several, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.  The term "Claim," when used with respect to litigation, also includes any claim which has been or could be asserted in the litigation.  Notwithstanding anything to the contrary contained herein, for purposes of this Plan, the term "Claim" shall be given the broadest possible meaning permitted by the Bankruptcy Code and applicable law, including, but not limited to, all manner and type of claim, whenever and wherever such claim may arise.

Claimant: A person or entity which holds a Claim.

Class: "Class" means a group of Claims or Interests classified together pursuant to this Plan.

Confirmation: "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order approving confirmation of this Plan or any subsequent version of such Plan.

Confirmation Date: "Confirmation Date" means the date the Confirmation Order is entered on the docket of the Bankruptcy Court pursuant to Bankruptcy Rule 5003; provided, however, that if, on motion, the Confirmation Order or consummation of this Plan is stayed pending appeal, and a bond is obtained and posted by the appellant so as to preserve defenses to a mootness argument on appeal, then the Confirmation Date shall be the later of the date of entry of the Final Order vacating such stay, or the date on which such stay expires, or the date upon which such stay is no longer in effect.

Confirmation Hearing: "Confirmation Hearing" means the hearing held by the Bankruptcy Court on confirmation of this Plan pursuant to Bankruptcy Code § 1129, now scheduled to occur on June 19, 2012, at 1:30 p.m. at the Sam M. Gibbons United States Courthouse, 801 N. Florida Ave, Tampa, Florida 33602.

<u>Confirmation Order</u>: "Confirmation Order" means the Order of the Bankruptcy Court confirming this Plan or any subsequent version of such Plan, whether or not such order is a Final Order, so long as such Order does not expressly contemplate the entry of further Orders affecting the Confirmation Date.

<u>Contingent</u>: "Contingent" means a right that has not accrued and that is dependent upon a future event or events that has or have not occurred and may never occur.

<u>Creditor</u> and <u>Claimant</u>: "Creditor" and "Claimant" mean any party or entity having a Claim against the Debtor, including, but not limited to, Creditors with Priority Claims, Creditors with Administrative Expense Claims, Creditors with Secured Claims, Creditors with Unsecured Claims and Creditors who may be Insiders.

<u>Debtor,</u> <u>Debtor-In-Possession</u> and <u>Reorganized Debtor</u>: "Debtor," "Debtor-In-Possession," and "Reorganized Debtor" mean Athena Development, LLC.

<u>Disclosure Statement</u>: "Disclosure Statement" means the Disclosure Statement filed in support of the Plan.

<u>Distribution</u>: "Distribution" means a distribution of Cash or other non-Cash consideration made by the Reorganized Debtor pursuant to the Plan.

<u>Distribution Date</u>: "Distribution Date" means any date that a Distribution is made under the Plan.

<u>Disputed Claim</u>: Prior to the date that an objection has been and may be timely filed by the Debtor or any other party in interest, a Claim shall be considered a "Disputed Claim" to the extent that:

    a.    the amount of the Claim specified in the proof of claim exceeds the amount of the Claim listed by the particular Debtor in the Schedules as not disputed, contingent, or unliquidated; or

    b.    the Claim was not listed by the particular Debtor in the Schedules; or

    c.    the Claim was listed by the particular Debtor in the Schedules as disputed, contingent or unliquidated; or

    d.    the Claim is reflected as unliquidated or contingent in the Proof of Claim.

A "Disputed Claim" shall remain disputed unless such objection has been withdrawn, overruled or denied in whole or part by a Final Order of the Bankruptcy Court or granted in whole or part by a Final Order of the Bankruptcy Court.  Subsequent to that date, a "Disputed Claim" means a Claim as to which an objection has been or may be timely filed by the Debtor or any other party in interest and which objection, if timely filed, has not been withdrawn, denied, or estimated by an order of the Bankruptcy Court.  To the extent an objection relates to the allowance of only a part of a Claim, or to its status (e.g., priority, secured, unsecured), such Claim shall be a Disputed Claim only to the extent of the objection.

Effective Date: "Effective Date" means that date which is fourteen (14) days after the latter of the entry of the Confirmation Order on the docket by the Bankruptcy Court, assuming no Motions for Reconsideration or Notices of Appeal have been filed with respect to which a stay pending reconsideration or appeal has been obtained, and the Reorganized Debtor's filing of a Notice of Substantial Consummation and a Motion for Entry of a Final Decree.  The filing of a Motion for Reconsideration or Notice of Appeal, in the absence of a stay pending reconsideration or appeal, will not delay the Effective Date.

Equitable Subordination: "Equitable Subordination" includes claims by the Debtor or the Trustee to subordinate the claims or interests of any party pursuant to the provisions of 11 U.S.C. § 510(c).

Equity Security Holders: "Equity Security Holders" shall include all Persons who hold a membership interest in the Debtor.

Estate: "Estate" means, as to the Debtor, the estate created for the Debtor by Section 541 of the Bankruptcy Code upon commencement of its Chapter 11 case.

Estate Assets: "Estate Assets" means all of the Debtor's property, including without limitation, any income, profits and proceeds, along with the assets owned by the Debtor as well as any other entities substantively consolidated into the Debtor, including but not limited to the Debtor's Equipment, Inventory, available Cash, Accounts Receivable, and the claims arising from any Litigation Claims.  Any reference in this Plan to liquidation proceeds, net liquidation proceeds, or proceeds of liquidation or similar language shall contemplate this definition.

Estimated Claim: "Estimated Claim" means the amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim against the Debtor which is contingent, unliquidated or disputed, for the purpose of (a) allowance under Section 502(c) of the Bankruptcy Code or (b) assisting the Bankruptcy Court in making the findings required for Confirmation

of this Plan pursuant to Sections 1129(a)(7)(A)(ii) and (a)(11) and, if necessary, Sections 1129(b)(1) and (2) of the Bankruptcy Code.

Executory Contracts: "Executory Contracts" shall mean any contracts which are described as executory contracts within the meaning and effect of 11 U.S.C. 365, which will be either Assumed Contracts or Rejected Contracts under this Plan.

Executory Contract Claims: "Executory Contract Claims" shall mean any Claims, including future rights to payments, which arise from the Debtor's action in assuming various Executory Contracts.

Executory Contract Creditors: "Executory Contract Creditors" shall mean any Creditors whose Claims, including future rights to payments, arise from the Debtor's action in assuming or rejecting Executory Contracts.

Final Order: "Final Order" means an Order of the Bankruptcy Court, the implementation, operation or effect of which has not been stayed and as to which Order (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing or *writ of certiorari* has expired and as to which no appeal or petition for review or rehearing or *certiorari* has been taken and is pending.

GACC Lots: "GACC Lots" means the 46 vacant lots located within the Summit at Lost Mountain subdivision which are encumbered by a mortgage in favor of German American Capital Corporation

General Unsecured Creditor: "General Unsecured Creditor" means any person or entity that is not an Insider and that holds an Unsecured Claim not otherwise classified by this Plan.

Governmental Unit: "Governmental Unit" means any foreign, provincial, federal, state, local or municipal (a) government, (b) governmental agency, (c) governmental commission, (d) governmental department, (e) governmental bureau, (f) governmental ministry or (g) governmental entity.

Guarantors: "Guarantors" means any person or entity who executed a personal guaranty in favor of any Creditor of the Debtor for any money loaned to or for the benefit of the Debtor.

Insider: "Insider" shall have the same meaning as set forth in the Bankruptcy Code.

Interest: "Interest" shall mean the rights held in any equity security by any equity security holder as such terms are defined in 11 U.S.C. § 101.

<u>Lien</u>: "Lien" means, with respect to any of the Debtor's assets or property, along with the other Estate Assets, any mortgage, lien, pledge, charge, security interest, encumbrance or other security device of any kind affecting such asset or property.

<u>Litigation Claims</u>: "Litigation Claims" shall refer to any claim brought by the Debtor, Debtor-in-Possession or the Reorganized Debtor to recover fraudulent, preferential or otherwise avoidable transfers, or any other claim which the Debtor, Debtor-in-Possession or Reorganized Debtor may hold.

<u>Litigation</u>: "Litigation" shall mean shall mean the pursuit of any Litigation Claims by the Debtor, Liquidated Debtor, or Distribution Agent seeking to recover assets, including receivables, and those which were the subject of fraudulent, preferential or otherwise avoidable transfers, or any other pursuit of legal remedies in a court of law that shall be necessitated by this bankruptcy filing or the implementation of this Plan.

<u>Lot / Lots</u>: "Lots" shall mean the GACC Lots, Lot 52 and the Unencumbered Lot; "Lot" shall mean any one of the GACC Lots, Lot 52 or the Unencumbered Lot.

<u>Lot 52</u>: "Lot 52" shall mean the real property and improvements located on Lot 52 within the Summit at Lost Mountain subdivision which is encumbered by a mortgage in favor of Midtown Bank & Trust.

<u>Non-Insider:</u> A Non-Insider is any creditor or other party in interest who is not an Insider as defined herein.

<u>Order</u>: "Order" means an order or judgment of any court of competent jurisdiction.

<u>Person</u>: "Person" means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity of whatever kind, whether or not for profit, including, but not limited to, any "person" as that term is defined in Section 101(41) of the Bankruptcy Code, but excluding any Governmental Units.

<u>Petition Date</u>: "Petition Date" means January 3, 2012.

<u>Plan</u>: "Plan" means this Chapter 11 Plan of Reorganization, Dated as of April 5, 2012, filed by the Debtor-in-Possession, and all schedules and other exhibits hereto, as well as any amendments, supplements, or modifications submitted by the Debtor-in-Possession in a manner consistent with the provisions of this Plan and the Bankruptcy Code.

Priority Claim: "Priority Claim" means any Claim entitled to priority pursuant to Bankruptcy Code §§ 507, 503, or other applicable law.

Proof of Claim: "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 and 3002.

Proof of Interest: "Proof of Interest" means any proof of interest filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3002.

Personal Property. "Personal Property" means any assets owned by the Debtor, other than real property.

Property:   "Property" means all of the real property and improvements as more particularly described on **Exhibit "B"** to the Disclosure Statement.

Rejected Contracts: "Rejected Contracts" means those executory contracts and/or unexpired leases either affirmatively rejected or not assumed prior to confirmation of this Plan.

Schedules: "Schedules" means the schedules and summary of schedules, and any amendments thereto, filed in this Chapter 11 case by the Debtor.

Secured Claim: "Secured Claim" means an Allowed Claim of a Creditor which is secured by a lien on any property of the Debtor's estate, and with respect to the Allowed Claim of a Creditor which is secured by a lien on any property of the other Estate Assets, to the extent of the value, determined pursuant to Bankruptcy Code § 506(a), of such Creditor's interest in the estate's interest in such property, or, in the absence of a Final Order determining secured status, the entire amount of the Allowed Claim as indicated in the corresponding Proof of Claim.  Except where the Claim arises from a nonrecourse loan, if the value of such Creditor's interest in the Debtor's interest in the subject property is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.  "Secured", when used as an adjective modifying the term "Claim", has the same corresponding meaning.

Subordinated Claim: "Subordinated Claim" means any Allowed Claim which this Court, by separate Order of this Court, including the Confirmation Order, subordinates pursuant to 11 U.S.C. §510(c).

Substantial Consummation: The Plan shall be deemed substantially consummated immediately upon the occurrence of the sale of either Lot 52 or one of the Lots.  Upon such substantial consummation, the Debtor may request that the Bankruptcy Court enter a Final Decree closing the case and for such other orders that may be necessary and appropriate.

Unencumbered Lot: "Unencumbered Lot" means that single lot owned by the Debtor located in the subdivision Lost Mountain.

Unexpired Leases: "Unexpired Leases" means any leases of real or personal property described as unexpired leases within the meaning and effect of 11 U.S.C. § 365 which will be either Assumed Contracts or Rejected Contracts under this Plan.

Unsecured Claim: "Unsecured Claim" means any Claim, held by the Non-Insider Creditors of the Debtor, other than an Administrative Expense Claim, Priority Claim, Secured Claim, or Tax Claim, and includes (a) the deficiency portion of an undersecured Claim, (b) the Claims of Insiders (as that term is defined above), and (c) any Claims for contract or lease rejection damages.

Unsecured Creditor: "Unsecured Creditor" means any Creditor holding an Unsecured Claim.

9.03   Severability.   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.04   Binding Effect.   The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.05   Captions.   The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.06   Controlling Effect.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida and those of the United States govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**ARTICLE X**
**EFFECT OF CONFIRMATION**

10.01   Binding Effect of Confirmation.   In accordance with § 1141(a) of the Bankruptcy Code, the provisions of a confirmed plan bind the Debtor, any entity issuing securities under the Plan, any entity acquiring property under the Plan, and any Creditor, equity

security holder, or general partner in the Debtor, whether or not the Claim or Interest of such Creditor, equity security holder or general partner is impaired under the Plan and whether or not such Creditor, equity security holder or general partner has accepted the Plan.

10.02    Injunction and Post-Confirmation Restrictions.  Consistent with the applicable provisions of the Order Confirming Second Amended Plan of Reorganization (Doc. 303)("SHS Confirmation Order") and the Order Establishing Post-Confirmation Restrictions on Operations (Doc. 360)("SHS Post-Confirmation Order") entered in Case No. 8:10-bk-25886-MGW of S.H.S. Resort, LLC, GACC shall be enjoined for a period of four (4) years from the Effective Date from taking any action against ODG or William Touloumis on account of their liability to GACC, so long as the Debtor makes timely payment of all obligations to GACC as required under the Plan.  ODG, and its parent S.H.S. Resort, LLC, shall continue to be bound by the terms of the SHS Confirmation Order and the SHS Post-Confirmation Order, which are incorporated herein by reference.   Following payment of GACC's Allowed Claim, consistent with this Plan and GACC election pursuant to 11 U.S.C. 1111(b), the Reorganized Debtor will be released from any further liability.

## ARTICLE XI
## OTHER PROVISIONS

### 11.1   Confirmation Order

The Confirmation Order shall contain all injunctions, including those set forth in Articles V and X above, and other orders that may be necessary to implement the Plan. To the extent necessary, the Confirmation Order shall contain any such provisions as may be necessary to provide for the substantial consummation of the Plan on the Effective Date.

### 11.2   No Admissions

This Plan provides for the resolution, settlement, and compromise of all Claims against the Debtor, including those claims against third parties derived from Claims against the Debtor.   No proposed course of conduct contemplated herein shall be construed as legally or equitably binding upon the Debtor, or any other party, prior to the Confirmation Date.

### 11.3   Amendments

The Debtor retains the right to amend, modify, or supplement this Plan at any time prior to or after the Confirmation Hearing, to the full extent that this is authorized by law.   Notice of any such amendment which materially adversely affects any Creditors or Equity Security Holders shall be sent to such parties as the Bankruptcy Court may direct.

### 11.4   Notices

All notices, motions, objections, or affidavits required by this Plan to be served on the Debtor-In-Possession or Reorganized Debtor shall be in writing, addressed as follows:

Hugo S. deBeaubien, Esq.
Shumaker, Loop & Kendrick, LLP
101 E. Kennedy Blvd, Suite 2800
Tampa, FL 33602

and shall be sent by United States first class mail or overnight delivery service or shall be made by hand delivery, but telecopy transmission alone shall not suffice as valid notice pursuant to this Plan.

11.5   Construction

Where not inconsistent or in conflict with the provisions of this Plan, the words and phrases used herein shall have the meanings ascribed thereto in the Bankruptcy Code and in the Bankruptcy Rules.

11.6   Dates

Rule 9006 of the Federal Rules of Bankruptcy Procedure shall govern the calculation of any dates or deadlines referenced in the Plan.

11.7   Substantial Consummation

The Plan shall be deemed substantially consummated immediately upon the sale of either Lot 52 or one of the Lots.  Upon such substantial consummation, the Debtor may request that the Bankruptcy Court enter a Final Decree closing the case and for such other orders that may be necessary and appropriate.

11.8   Retention of Jurisdiction

The Bankruptcy Court shall retain such jurisdiction as may be necessary to interpret and enforce the provisions of this Plan at any time.

11.9   Surcharge

The Debtor retains the right to bring any appropriate claims to surcharge the collateral of any Secured Creditors pursuant to 11 U.S.C. §506 and other applicable law.

11.10   Special Tax Provisions

In accordance with 11 U.S.C. §1146(a), all transfers of property contemplated in this Plan may not be taxed under any law imposing a stamp tax or similar tax.

Dated: June 13, 2012

Respectfully submitted,

By: _/s/ William E. Touloumis_____
   **WILLIAM E. TOULOUMIS**
   *Manager, Athena Development, LLC*

   -and-

By: /s/ Steven M. Berman
**STEVEN M. BERMAN, ESQ.**
Florida Bar No. 856290
sberman@slk-law.com
**HUGO S. DEBEAUBIEN, ESQ.**
Florida Bar No. 058100
bdebeaubien@slk-law.com
101 E. Kennedy Blvd., Suite 2800
Phone (813) 229-7600
Facsimile (813) 229-1660
*Attorneys for the Debtor*